# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-2673

_____

United States of America,    &ast;

           &ast;

     Appellee,   &ast;

           &ast;  Appeals from the United States

   v.        &ast;  District Court for the

           &ast;  Northern District of Iowa.

Keith Clayton Mesner,    &ast;

           &ast;

     Appellant.   &ast;

_____

Submitted: May 10, 2004
Filed: July 26, 2004

_____

Before LOKEN, Chief Judge, BRIGHT, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

Keith Mesner pleaded guilty to conspiring to manufacture methamphetamine within 1,000 feet of a school in violation of 21 U.S.C. §§ 841(a)(1) and 841 (b)(1)(A). Mesner now appeals his sentence, arguing the district court clearly erred in finding (1) that he is accountable for 315 grams of actual methamphetamine, and (2) that his role in the offense was that of "an organizer, leader, manager, or supervisor" of a criminal activity that involved fewer than five participants. For the reasons stated below, we affirm in part and reverse and remand in part.

## I.

On November 29, 2001, law enforcement officers responded to a report that a strong ether odor was emanating from Mesner's garage at 206 South Eleventh Street, Sac City, Iowa. When the officers arrived, they spoke to Mesner and Gary Moeller, who was also present. When the officers asked Mesner about the smell of ether, Mesner told the officers that the smell was due to his spraying for spiders. Inside Mesner's garage, the officers saw a white jug and asked Mesner about its contents. Mesner retrieved the jug and poured the liquid on his hands and told the officers it was water. Mesner then went back into the garage and returned carrying a grey, liquid-filled pan. Mesner told the officers that the liquid was also water. Mesner poured the liquid out and the officers immediately recognized the odor of kerosene. They also noticed two pieces of grey metal in the pan, later identified as lithium battery strips.

Based upon their observations, the officers obtained and executed search warrants at Mesner's and at Moeller's residences. The officers found methamphetamine laboratories at both residences. Three amounts of methamphetamine were seized at Mesner's residence and garage and tested–yielding 1.19 grams (19% purity); 1.23 grams (15% purity); and 3.43 grams (17% purity). As a result, Mesner was arrested on state-drug charges, and he provided an arrest interview. Mesner confessed that he was cooking methamphetamine in his garage and was using one-half to one gram of methamphetamine a day.

Mesner began cooperating with federal authorities and met with them on three occasions in 2002. During these debriefings, Mesner admitted that he began manufacturing methamphetamine in the spring of 2001. He stated that Moeller had the recipe but could not read it so he helped Moeller read it and eventually got a copy of the recipe. Mesner also estimated that, during a six-month period, he completed a total of thirty methamphetamine cooks. Each cook yielded three to four "eight-balls" (10.5 to 14 grams), for a total of 315 to 420 grams of methamphetamine.

In June 2002, local police arrested Mesner in Storm Lake, Iowa, after finding precursors for methamphetamine in his car following a traffic stop. In October of 2002, Mesner was arrested a second time after officers stopped him and discovered methamphetamine precursors in his vehicle. After the second arrest, federal investigators informed Mesner that they would not be using him as a cooperating witness.

Federal authorities arrested Mesner in December 2002 charging Mesner, Moeller, and another defendant with one count of conspiracy to manufacture and distribute 50 grams or more of actual (pure) methamphetamine within 1,000 feet of the Sac Community High School. On February 4, 2003, Mesner pleaded guilty pursuant to a plea agreement. He did not admit to the drug quantity, but consented to having the sentencing judge determine the quantity of methamphetamine attributable to him and to determine his role in the offense. Mesner also agreed to have the sentencing judge determine the issues of acceptance of responsibility and obstruction of justice.

On June 13, 2003, at the sentencing hearing, Moeller, testifying for the government, reported that he and others helped Mesner manufacture methamphetamine. Mesner testified at the hearing that he had cooked methamphetamine roughly thirty times, which was consistent with his earlier testimony. The district court determined that Mesner was responsible for 315 grams of actual methamphetamine. The district court determined Mesner's base offense level was 34 based on 315 grams of actual methamphetamine. Mesner received a two-level increase for being an organizer, leader, manager, or supervisor and a one-level increase for committing the offense within a protected location. He received a three-level reduction for acceptance of responsibility and no obstruction enhancement. This resulted in an adjusted offense level of 34. Mesner was sentenced to 168 months imprisonment. This timely appeal followed.

## II.

Mesner first argues that the district court erred by enhancing his base offense level by two levels for his role as "an organizer, leader, manager, or supervisor" of a criminal activity that involved fewer than five participants. U.S.S.G. § 3B1.1(c). "We review the district court's decision to assess a sentencing enhancement based upon a defendant's role in the offense for clear error, and the government has the burden to prove that such an increase is warranted." *United States v. Johnson*, 278 F.3d 749, 752 (8th Cir. 2002). We find no error.

To apply an adjustment under § 3B1.1, a sentencing court should consider such factors as "the exercise of decision-making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." U.S.S.G. § 3B1.1, cmt. n.4.

Mesner's own testimony provides sufficient evidence to support the district court's role enhancement. Mesner testified before a federal grand jury that in the thirty or so methamphetamine cooks he performed, Deb Luetje was with him for at least half of them. He stated that Luetje purchased most of the pills for him and in exchange he provided Luetje with methamphetamine. Mesner also testified that Tina Wiltse purchased pills for him approximately six to eight times. Mesner recalled that Ken Wiltse, Tina's husband, drove him twice to obtain anhydrous ammonia. Also, Mesner stated that Doug Harms got pills for him and would crush foils, get jars, and help him clean up after the cooks in exchange for methamphetamine. Mesner stated that he sold methamphetamine to Harms once a month.

Based on this evidence, the government was able to demonstrate by a preponderance of the evidence that Mesner "controlled at least one other participant in the drug trafficking offense." *United States v. Yerkes*, 345 F.3d 558, 563 (8th Cir.

2003); *see also, United States v. Encee*, 256 F.3d 852, 854 (8th Cir. 2001). The evidence established that Mesner was a manager or supervisor of a criminal activity. Here, Mesner managed at least four others–Harms, Luetje and the Wiltses. Thus, the district judge did not clearly err by enhancing Mesner's sentence for being a manager or supervisor of the conspiracy.

Next, Mesner argues that the district court erred in its drug quantity determination. We also review a district court's finding as to drug quantities for sentencing purposes for clear error. *United States v. Moore*, 212 F.3d 441, 446 (8th Cir. 2000). "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* (internal quotations omitted).

For drug manufacturing offenses, the Guidelines provide that a defendant's base offense level is based upon drug quantity. U.S.S.G. § 2D1.1(a)(3). The Drug Quantity Table in U.S.S.G. § 2D1.1(c) specifies the base offense levels for various quantities of the most common illegal drugs. The government bears the burden of proving drug quantity by a preponderance of the evidence. *United States v. Houston*, 338 F.3d 876, 878 (8th Cir. 2003). Under U.S.S.G. § 2D1.1(c), a defendant's base offense level is 34 if the amount attributable to the defendant amounts to "[a]t least 1.5 KG but less than 5 KG of Methamphetamine, or at least 150 G but less than 500 G of Methamphetamine (actual)[1] . . . ." U.S.S.G. § 2D1.1(c)(3).

---

[1]The commentary to § 2D1.1 defines "methamphetamine (actual)":

the weight of the controlled substance, itself, contained in the mixture or substance. For example, a mixture weighing 10 grams containing [methamphetamine] at 50% purity contains 5 grams of [methamphetamine] (actual).

U.S.S.G. § 2D1.1, cmt. n.(B) to Drug Quantity Table.

The probation office's presentence report ("PSR") assessed a total quantity of 315 to 420 grams of actual methamphetamine attributable to Mesner based on his admission of completing thirty cooks and yielding approximately 10.5 grams per cook. Mesner timely objected to the drug quantity amount in the PSR asserting that the actual methamphetamine yielded from his cooks was not 315 grams, but considerably less because his cooks did not produce pure methamphetamine. When, as here, a timely objection to the PSR is made, the sentencing court may not rely solely on the PSR when making a finding as to the disputed facts but must do so on the basis of evidence. *United States v. Hudson*, 129 F.3d 994, 995 (8th Cir. 1997). Mesner not only objected to the PSR's recommended § 2D1.1 enhancement, he specifically objected to the PSR's assertion that he successfully manufactured 315 grams of methamphetamine. The court overruled this objection.

Mesner does not contest the court's finding that he was responsible for at least 315 grams of a *mixture* of methamphetamine. Mesner argues that the district court erred in assigning him responsibility for 315 grams of actual methamphetamine. The issue we face is whether the court properly calculated Mesner's drug quantity based upon actual methamphetamine quantities proven at sentencing.

To calculate the actual methamphetamine quantity, the district court was required to apply the percentage of actual methamphetamine found in the methamphetamine seized from Mesner's garage to the unrecovered 315 grams of methamphetamine he acknowledged. *Houston*, 338 F.3d at 879 (citing *United States v. Newton*, 31 F.3d 611, 614 (8th Cir. 1994)). Mesner contends the computation should have been based upon 15% of the 315 grams of methamphetamine. We disagree. Police seized three batches of actual methamphetamine of varying purity levels (15%, 17%, and 19%) from Mesner's garage on the night of his arrest. The district court did not apply any of the percentages, as required under the Guidelines, to the gross amount produced. Based upon *Houston*, 338 F.3d at 878–89, we hold the district court clearly erred.

## III.

For the foregoing reasons, we affirm the district court's enhancement of Mesner's sentence for his role in the conspiracy. However, we reverse and remand for resentencing to determine the actual methamphetamine attributable to Mesner.

_____