# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 05-2709/3450

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeals from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| Kenneth Hacker, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: March 14, 2006
Filed: June 16, 2006

_____

Before WOLLMAN, FAGG, and RILEY, Circuit Judges.

_____

RILEY, Circuit Judge.

Kenneth Hacker (Hacker) brings this appeal following his guilty plea to bank fraud under 18 U.S.C. § 1344. Hacker committed bank fraud in South Dakota while on supervised release for several Massachusetts federal convictions. Following Hacker's guilty plea to bank fraud, the district court[1] sentenced Hacker to 180 months' imprisonment after departing upward under the Sentencing Guidelines (Guidelines). In a separate proceeding regarding Hacker's supervised release violation, the district court revoked Hacker's supervised release, sentenced Hacker

_____

[1]The Honorable Charles B. Kornmann, United States District Judge for the District of South Dakota.

to 24 months' imprisonment, and ordered the sentence be served concurrently with the 180-month sentence if the bank fraud sentence is affirmed on appeal.

Hacker appeals, arguing the district court (1) erred by departing upward under the Guidelines, (2) imposed an unreasonable sentence on Hacker's bank fraud conviction, (3) lacked jurisdiction to revoke Hacker's supervised release, and (4) imposed the revocation sentence for an improper purpose. Following our thorough review of the record, we affirm.

I.     BACKGROUND

In June 2000, Hacker was indicted in the United States District Court for the District of Massachusetts for multiple counts of mail fraud, wire fraud, and uttering and possessing counterfeit securities. Hacker pled guilty to the federal charges and was sentenced to 18 months' imprisonment and 3 years' supervised release. On September 25, 2001, Hacker was released from prison and began serving his supervised release term, which would expire on September 24, 2004. In June 2003, Hacker visited South Dakota to attend his brother's funeral. Because Hacker had been living in various Massachusetts homeless shelters, authorities allowed Hacker to relocate to South Dakota and reside with his mother, Marlene M. Iron Shell (Iron Shell), while under the supervision of South Dakota probation authorities.

In July 2003, Iron Shell received $125,264.59 from her deceased son's life insurance policy. She deposited the money in her Bank One account. On October 6, 2003, following Hacker's urging, Iron Shell added Hacker's name to all of her bank accounts, giving Hacker authority to withdraw funds from the joint accounts. Over the next few months, Hacker transferred approximately $90,000 to his mother's Wells Fargo Bank account without her knowledge. Hacker also withdrew money from the Bank One account using online cash services. The Bank One account eventually was closed with a zero balance on January 23, 2004.

In February 2004, Hacker opened savings and checking accounts with BankWest, Inc. (BankWest). During the next month, Hacker used Iron Shell's personal checks and forged her signature, writing eight checks totaling $204,486.78 to himself on the closed Bank One account and depositing the checks into his own BankWest accounts. Using several methods, including cash withdrawals, wire transfers, cashiers' checks, automatic clearinghouses, and electronic transfers over the Internet, Hacker withdrew funds from his BankWest account before the checks were returned for nonsufficient funds. BankWest froze Hacker's accounts before posting some of the deposited checks, yet the bank still incurred an actual loss of $87,228.79. Even after BankWest closed Hacker's account on March 29, 2004, Hacker attempted to withdraw funds from the account, including a failed $29,999.99 electronic transfer to an Ameritrade brokerage account as well as nonsufficient funds to NetBank and TD Waterhouse totaling over $15,000.

On July 21, 2004, a grand jury indicted Hacker for bank fraud, in violation of 18 U.S.C. § 1344,[2] and for embezzlement and theft from an Indian tribal organization, in violation of 18 U.S.C. § 1163. Hacker pled guilty to bank fraud, which carries a maximum statutory penalty of 30 years' imprisonment and a fine of one million dollars. See 18 U.S.C. § 1344. At sentencing, the district court assigned Hacker a base offense level of 7, see U.S.S.G. § 2B1.1(a)(1), and increased it by 12 levels because the intended loss exceeded more than $200,000, see U.S.S.G. § 2B1.1(b)(1)(G). Two levels were added for the use of sophisticated means to commit the offense, with no objection from Hacker. See U.S.S.G. § 2B1.1(b)(9)(C). The district court also imposed a 2-level enhancement for obstruction of justice based on Hacker's failure to disclose a felony conviction in Oklahoma for obtaining money and merchandise by means of a false and bogus check. Hacker's adjusted offense level of 23, together with his criminal history category of VI, resulted in a Guideline sentencing range of 92 to 115 months. Finding Hacker failed to demonstrate he had

_____

[2]The grand jury also indicted Iron Shell for bank fraud, but the government later dismissed her as a defendant.

clearly accepted responsibility for his offense, the district court refused to reduce the offense level from 23.

The district court then departed upward 6 levels on the grounds Hacker's criminal history category failed to encompass his past criminal conduct and did not adequately represent the likelihood Hacker would commit further crimes. Noting Hacker had been released from a 60-day jail sentence in Massachusetts to return to South Dakota for his brother's funeral, the district court also noted Hacker used this opportunity to steal his deceased brother's life insurance proceeds from his own mother. The court concluded such conduct "was unusually heinous, cruel, and degrading" to Hacker's mother. The adjustment resulted in a total offense level of 29 and a Guideline range of 151 to 188 months. The district court sentenced Hacker to 180 months' imprisonment and 5 years' supervised release.

On July 12, 2005, the district court held Hacker's revocation hearing, during which Hacker admitted violating the conditions of his supervised release by committing bank fraud. Although the recommended sentencing range was 12 to 18 months' imprisonment, see U.S.S.G. § 7B1.4(a), the district court sentenced Hacker to 24 months' imprisonment, the statutory maximum under 18 U.S.C. § 3583(e)(3). The district court further ordered the sentence to run concurrently with Hacker's bank fraud sentence if that 180-month sentence is upheld on appeal. If, however, the bank fraud sentence is reduced on appeal, the revocation sentence should run consecutive to the extent necessary to achieve a total sentence of 180 months. This appeal followed.

## II. DISCUSSION
### A. Bank Fraud Conviction Sentence

Hacker first contends the district court erred when determining the appropriate sentence for his bank fraud conviction by departing upward under U.S.S.G. § 4A1.3. We review de novo whether the district court imposed Hacker's sentence in violation of law or as the result of an incorrect application of the Guidelines. See United States

v. Fogg, 409 F.3d 1022, 1026 (8th Cir. 2005). We review for abuse of discretion the district court's decision to depart upward from the Guidelines, and we review the extent of the departure and final sentence for reasonableness. Id. (citations omitted).

### 1.    Upward Departure

Section 4A1.3 of the Guidelines suggests an upward departure may be warranted when "reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." U.S.S.G. § 4A1.3(a)(1). When contemplating and structuring such a departure, the district court should consider both the nature and extent of a defendant's criminal history. United States v. Gonzales-Ortega, 346 F.3d 800, 802 (8th Cir. 2003). "In deciding the likelihood that a defendant may commit other crimes, a court may take into account any evidence of obvious incorrigibility and conclude that leniency has not been effective." United States v. Herr, 202 F.3d 1014, 1016 (8th Cir. 2000) (internal quotations and alteration omitted). Although the sentencing court cannot consider a defendant's prior arrest record itself as the basis for an upward departure, it may consider prior similar adult criminal conduct not resulting in conviction, prior similar civilly-adjudicated misconduct, and prior sentences. U.S.S.G. § 4A1.3(a)(2), (3); United States v. Hawk Wing, 433 F.3d 622, 628 (8th Cir. 2006).

Our review of the record convinces us the district court did not abuse its discretion by departing upward under section 4A1.3. The district court documented its basis for an upward departure, stating Hacker "was a career criminal, that his occupation throughout his adult lifetime has been stealing money, that his criminal history category (VI) was not adequate, [and] that his criminal history category does not adequately represent the likelihood that he will commit further crimes or encompass adequately his past criminal conduct." In departing upward for inadequacy of criminal history, the district court relied on Hacker's Presentence Investigation Report (PSR), and pointed to Hacker's numerous convictions for which he received no criminal history points, including convictions for petty theft, injury to

-5-

property, larceny by check, larceny over $250, and larceny and embezzlement. Furthermore, the district court considered several uncontested pending charges against Hacker, including charges for grand larceny, passing a check against a nonexistent account, and nonsufficient funds checks.

In addition, Hacker's other misconduct, which he objected to as not relevant conduct and as not admitted as a part of the guilty plea, included: causing Great Western Bank to incur a loss of over $24,000 by writing nonsufficient funds checks and writing checks on a closed Great Western Bank account; forging his own "payroll" checks using another individual's checking account number on the counterfeit checks; theft from an Indian tribal organization for cashing seventeen of the counterfeit "payroll" checks at a South Dakota casino, which checks were returned to the casino for nonsufficient funds; cashing counterfeit checks totaling $5,250 at another South Dakota casino; and storing computer images of his own driver's license (in stages of modification), U.S. currency, another individual's driver's license and veteran's identification card (also in stages of modification), a letter indicating a transfer of ten million dollars to an account at Union Bank Switzerland, and a copy of a "Jane Doe" social security card. In addition to Hacker's convictions, pending charges, and other misconduct, the district court also pointed to Hacker's repeated violations of probation and supervised release, as well as his failure to pay any restitution in his federal fraud conviction from Massachusetts.

Hacker contends the district court erred in relying upon his prior arrest record as a basis for departing upward, thus violating section 4A1.3(a)(3). During sentencing, the district court briefly discussed twelve arrest warrants under Hacker's name. We agree with Hacker the record lacks sufficient information concerning the factual nature underlying six of these arrest warrants, including four warrants issued in 1996 for nonsufficient funds checks, one warrant issued in 1996 for obtaining money or property by means of a false and bogus check, and one warrant issued in 2005 for fraud and nonsufficient funds. See Hawk Wing, 433 F.3d at 628 (noting "the PSR must . . . provide specific facts underlying the arrests in order for the arrest

-6-

record to justify an upward departure; otherwise the district court may not rely on a mere record of arrest" (citation omitted)). However, the PSR provided sufficient factual details underlying Hacker's remaining arrest warrants to allow the district court to consider them, and the district court did not rely solely on the warrants to justify the upward departure.

Hacker's consistent pattern of deceit and misconduct indicates both the inadequacy of his criminal history category as well as a strong likelihood he will commit future crimes. Hacker's previous convictions, pending charges, and other similar adult criminal conduct provided adequate grounds to warrant the district court's upward departure decision. See, e.g., id. at 628-29; United States v. Morse, 983 F.2d 851, 854 (8th Cir. 1993). Thus, notwithstanding the district court's erroneous consideration of six arrest warrants, we conclude the court had sufficient evidence and did not abuse its discretion in departing upward.

### 2.     Reasonableness of Hacker's Sentence

Hacker next asserts the district court abused its discretion by imposing an unreasonable sentence because the nature and circumstances of the offense as well as his own history and characteristics do not justify the district court's sentence of 180 months' imprisonment. Hacker further argues disparity exists between his sentence and sentences affirmed by this court in similar cases.

A sentence may be unreasonable if the district court "fails to consider a relevant factor that should have received significant weight, gives significant weight to an improper or irrelevant factor, or . . . commits a clear error of judgment." United States v. Haack, 403 F.3d 997, 1004 (8th Cir.), cert. denied, 126 S. Ct. 276 (2005). Applying this standard to Hacker's case, we conclude the extent of the district court's upward departure is reasonable. Contrary to Hacker's calculations, it appears the district court departed from a Guideline sentencing range of 92 to 115 months, not from a range of 63 to 78 months as initially recommended in the PSR. Thus, Hacker's 180-month sentence was an increase of approximately 56% from the

maximum Guideline range of 115 months. While a significant upward departure, the district court's thoroughly stated justification for Hacker's sentence convinces us the district court did not exceed the permissible bounds of its discretion, and thus imposed a reasonable sentence.

The district court discussed its reasoning behind the upward departure and sentence during the sentencing hearing, in its statement of reasons, and in its order and opinion filed after the sentencing hearing, specifically noting its consideration of the factors set forth in 18 U.S.C. § 3553(a). As the district court noted, Hacker's "behavior suggests an addiction to deceiving people." Describing Hacker as a "one man crime wave,"[3] and pointing to Hacker's "heinous" conduct of stealing his deceased brother's life insurance proceeds from his mother and bringing his mother into legal jeopardy by forging Iron Shell's name on checks and withdrawals, the district court stated it had "not seen a more dedicated history of criminal activity" by someone of Hacker's age of 38 years. It further noted Hacker's apparent failure to learn anything from his previous experiences with the criminal justice system, finding no reason why a person who, in effect, stole from his own mother and deceased brother would not also steal from a stranger.

We agree with the district court that Hacker's criminal history category did not adequately reflect the likelihood Hacker will continue to commit serious crimes or adequately encompass his past criminal conduct. "By taking account of the seriousness of [Hacker's] past criminal conduct and his potential for recidivism, the district court advanced the statutory sentencing objectives of affording adequate deterrence to criminal conduct, and protecting the public from further crimes of the defendant." United States v. Flores, 336 F.3d 760, 764 (8th Cir. 2003) (internal quotations omitted) (citing 18 U.S.C. § 3553(a)(2)(B) and (C)).

---

[3]By our count, Hacker has approximately ten prior adult convictions of record, four of which were not included in his criminal history score.

Furthermore, we consider the decisions cited by Hacker in support of his sentencing disparity argument inapposite to the present case. For the reasons stated previously, we find nothing unreasonable in the extent of the district court's upward departure to a sentence of 180 months' imprisonment, which is still only 50% of the statutory maximum of 30 years for the offense to which Hacker pled guilty. See 18 U.S.C. § 1344. We therefore affirm the sentence imposed by the district court.

### B.      Revocation of Supervised Release
### 1.      Jurisdiction to Revoke Supervised Release

Hacker next contends the district court lacked jurisdiction to revoke his supervised release from his Massachusetts conviction, arguing his supervised release term expired before the district court's revocation order and no valid warrant was issued within the supervision period to extend the district court's authority to revoke Hacker's supervised release under 18 U.S.C. § 3583.[4] We review de novo the issue of whether the district court had authority to revoke Hacker's supervised release. See, e.g., United States v. Barton, 26 F.3d 490, 491 (4th Cir. 1994) ("Jurisdiction is a question of law subject to *de novo* review." (citation omitted)).

Hacker's Massachusetts supervised release term commenced on September 25, 2001, and ended on September 24, 2004, thus expiring before the district court's final revocation order on August 25, 2005. Therefore, the district court could revoke Hacker's supervised release only by satisfying the requirements of 18 U.S.C. § 3583(i), which provides:

> The power of the court to revoke a term of supervised release for violation of a condition of supervised release, and to order the defendant to serve a term of imprisonment . . . extends beyond the expiration of the term of supervised release for any period reasonably necessary for the

---

[4]Although Hacker did not raise this issue before the district court, jurisdictional questions such as this one may be raised at any time. See, e.g., United States v. Davis, 103 F.3d 660, 675 (8th Cir. 1996) (quotation omitted).

adjudication of matters arising before its expiration if, before its expiration, a warrant or summons has been issued on the basis of an allegation of such a violation.

The following facts guide our determination of whether the district court had authority to revoke Hacker's supervised release. On July 21, 2004, Hacker was indicted in the District of South Dakota for bank fraud and for embezzlement and theft from an Indian tribal organization. Following the issuance of an arrest warrant, authorities placed Hacker in custody on July 29. On August 30, pursuant to 18 U.S.C. § 3605, the District of Massachusetts transferred jurisdiction over Hacker to the District of South Dakota upon South Dakota's order of acceptance of jurisdiction. Approximately one week later on September 8, the District of South Dakota signed the transfer order, accepting jurisdiction over Hacker "from and after the entry of th[e] order." The transfer order was electronically filed on September 23, and was docketed and manually date-stamped by the district court clerk's office the following day.

Also on September 23, the United States Probation Office in the District of South Dakota filed a petition to revoke Hacker's supervised release (revocation petition). The revocation petition alleged Hacker violated the conditions of his supervised release by, among other things, committing bank fraud and embezzling and stealing from an Indian tribal organization. The district court's order, which was located on the revocation petition's final page and authorized the issuance of a warrant, was signed, electronically filed, and manually date-stamped on September 23. The order was docketed the following day.

Relying on this chronology of events, Hacker contends: (1) his supervised release term expired before Massachusetts transferred jurisdiction to South Dakota; and (2) even if the transfer order was timely, the district court's order for a warrant for the supervised release violation was issued before South Dakota had jurisdiction over Hacker. We disagree. The record indicates the transfer order was filed electronically on September 23, 2004. The September 24, 2004, manual date-stamp

-10-

on the face of the order, which muddies the waters on this issue, is secondary to the electronic filing date and likely reflects the date of the order's clerical entry on the case docket report. Thus, the District of South Dakota timely assumed jurisdiction over Hacker on September 23, 2004. Under the shelter of that jurisdictional umbrella, South Dakota properly exercised its authority pursuant to 18 U.S.C. § 3606 to issue a warrant that same day for Hacker's supervised release violation.

Alternatively, Hacker challenges the warrant's validity under the Fourth Amendment, arguing the revocation petition was not supported by oath or affirmation. Again, we disagree. Because an indictment had been returned against Hacker for bank fraud and for embezzlement and theft from an Indian tribal organization, and the revocation petition referenced both the indictment and the allegations forming the basis of Hacker's indictment as a basis for revoking Hacker's supervised release, "the warrant [could] issue on request without more, since the indictment [was] a determination of probable cause by the grand jury, and the indictment [was] made on the oath of the grand jury." 1A Charles Alan Wright, *Federal Practice and Procedure* § 151 (3d ed. 2005) (footnotes omitted); see also 18 U.S.C. § 3583(d); United States v. Hondras, 296 F.3d 601, 602 (7th Cir. 2002) (holding under 18 U.S.C. § 3583(d) "committing any other federal, state, or local crime is an explicit violation of the terms of [supervised] release").

In support of his argument attacking the warrant's validity, Hacker relies on United States v. Vargas-Amaya, 389 F.3d 901, 906-07 (9th Cir. 2004), in which the Ninth Circuit held a district court has jurisdiction to revoke supervised release under 18 U.S.C. § 3583(i) only if the warrant issued during the term of supervision is based upon probable cause and supported by sworn allegations the person violated a condition of supervised release. Unlike the case before us, however, Vargas-Amaya does not indicate a grand jury indictment had been returned against the defendant on the basis of factual allegations similarly referenced in the revocation petition. Id. at 903 n.1. Here, a grand jury indictment against Hacker–which by itself was a determination of probable cause and was made on oath by the grand jury–provided

-11-

the requisite probable cause and oath to support the later warrant. Thus, we find Vargas-Amaya distinguishable from the present case and conclude the warrant issued by the district court fully satisfied the requirements of the Fourth Amendment.

### 2. Reasonableness of Revocation Sentence

Finally, Hacker appeals the 24-month sentence imposed following Hacker's guilty plea for violating the conditions of supervised release by committing bank fraud. During the revocation sentencing hearing, after considering Hacker's supervised release violations, his failure to make restitution or special assessment payments, and his conduct forming the basis of the bank fraud conviction, the district court opined Hacker should not serve any more or any less than the 180 months already imposed for the bank fraud conviction. Accordingly, the district court sentenced Hacker to 24 months' imprisonment, to run concurrently with Hacker's bank fraud sentence if the 180-month sentence is upheld on appeal, and to run consecutively if the bank fraud sentence is reduced on appeal to the extent necessary to achieve a total sentence of 180 months. On appeal, Hacker argues the district court's revocation sentence is unreasonable because it was imposed improperly to protect the length of the bank fraud sentence, and he requests this case be remanded with instructions to make any revocation sentence concurrent with the bank fraud sentence.

We need not address the propriety of the district court's decision to hinge Hacker's revocation disposition to the outcome on appeal of Hacker's bank fraud sentence. Hacker's requested relief on appeal is a remand with instructions "to make any [revocation] sentence concurrent with the bank fraud sentence regardless of the outcome" in the bank fraud appeal. Hacker does not challenge the reasonableness of the 24-month sentence. Because we affirm Hacker's 180-month bank fraud sentence, under the terms of the district court's order, Hacker's 24-month revocation sentence will run concurrently with the bank fraud sentence. Such a disposition ultimately complies with Hacker's requested relief for concurrent sentences. Thus, we affirm

the sentence of 24 months' imprisonment, to run concurrently with Hacker's 180-month bank fraud sentence.

## III.  CONCLUSION

We affirm Hacker's sentence.

_____