# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-2530

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | Northern District of Iowa. |
| | * | |
| Leodan Vasquez, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: December 10, 2008
Filed: January 21, 2009

_____

Before WOLLMAN, BYE, and RILEY, Circuit Judges.

_____

RILEY, Circuit Judge.

The district court[1] sentenced Leodan Vasquez (Vasquez) to 320 months imprisonment after a jury found Vasquez guilty of two methamphetamine charges. Vasquez appeals his sentence, arguing the district court (1) erred in imposing a three-level enhancement under U.S.S.G. § 3B1.1(b) based on Vasquez's managerial or supervisory role in the offense, and (2) abused its discretion in departing upward

_____

[1]The Honorable Mark W. Bennett, United States District Judge for the Northern District of Iowa.

under U.S.S.G. § 4A1.3 based on under-representation of Vasquez's criminal history. We affirm.

## I.    BACKGROUND

On August 8, 2007, a law enforcement officer was conducting surveillance of a Fort Dodge, Iowa, residence when the officer observed a white car and a black truck leave the residence. The officer followed the vehicles and noticed the driver and passenger of the truck were not wearing seatbelts. The officer requested a marked vehicle to conduct a traffic stop of the truck, and the driver and passenger subsequently put on their seatbelts. When a marked law enforcement vehicle attempted to stop the truck, the driver refused to stop and, instead, engaged officers in a high speed chase through Fort Dodge. During the chase, officers observed items being thrown out the windows of the truck. The chase came to a halt when the truck crashed into a parked vehicle. Law enforcement vehicles surrounded the truck. Undeterred, the driver of the truck attempted to back away from the parked vehicle, ramming into a law enforcement cruiser.

Vasquez, the driver of the truck, and Juan Jose Islas-Bravo (Islas-Bravo), the passenger, were arrested. Officers retrieved the items thrown from the truck, which were identified as a scale and a baggie containing 65.28 grams of methamphetamine (21.9% pure). A search of the truck yielded cash and other personal items. Officers executed a search of the Fort Dodge residence and discovered a surveillance camera at the back door with monitors inside; 277.8 grams of methylsulfonylmethane (MSM), a methamphetamine cutting agent; $3,655.38 in cash; and personal items indicating Vasquez resided at the residence.

On October 26, 2007, a grand jury returned a superseding indictment against Vasquez and his co-defendant, Islas-Bravo, charging them with (1) conspiracy to distribute and possess with intent to distribute 500 grams or more of a methamphetamine mixture, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and

846; and (2) possession with intent to distribute and aiding and abetting the distribution of 50 grams or more of a methamphetamine mixture containing 5 grams or more of actual methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) and 18 U.S.C. § 2.[2] On February 14, 2008, the government filed notice of its intent to seek an enhanced penalty for Vasquez based on his prior felony drug conviction in Missouri state court.

Vasquez's jury trial commenced on February 19, 2008. Several cooperating witnesses testified at Vasquez's trial. Wilmer Antonio Mendez disclosed he supplied Vasquez an "8-ball" (3.54 grams) of methamphetamine mixture almost every other day for three months before December 2006. Whitney Davies (Davies) indicated she and Gene Smith (Smith) acquired an ounce or an ounce and a half of methamphetamine from Vasquez on two or three occasions in the spring of 2007. Ashley Feauto (Feauto) testified she purchased methamphetamine from Vasquez twenty-five to thirty times between January and March 2007. Feauto related she purchased one-half ounce quantities approximately fifteen to twenty times, an ounce on three occasions, and an 8-ball on one occasion. Feauto also reported she provided Vasquez with MSM, and when Vasquez did not have any methamphetamine, Feauto would sell Vasquez's buyers the MSM, pretending she was Vasquez's dealer. That way, Feauto claimed, if the buyers discovered it was "bad meth," they would blame Feauto, rather than Vasquez. Feauto would then split the profits with Vasquez. On February 21, 2008, the jury found Vasquez guilty on both counts.

Vasquez's sentencing hearing took place on July 3, 2008. The presentence investigation report (PSR) calculated a total offense level of 34 and a criminal history category of III. Based on Vasquez's offense level and criminal history category, the advisory United States Sentencing Guidelines (Guidelines) range was 188 to 235

[2]The third count in the superseding indictment charged Vasquez's co-defendant, Islas-Bravo, with unlawfully entering the United States from Mexico, in violation of 8 U.S.C. § 1325(a).

months imprisonment.  See U.S.S.G. § 5 Sentencing Table.  Because the government sought an enhanced penalty based on Vasquez's prior felony drug conviction, Vasquez's conviction carried a mandatory minimum of 20 years, or 240 months, imprisonment.  At the sentencing hearing, the government objected to (1) the PSR's failure to calculate a three-level enhancement for Vasquez's managerial or supervisory role in the offense, (2) the PSR's failure to calculate a two-level enhancement for obstruction of justice based on Vasquez's discarding of drugs and other evidence during the police chase, and (3) the PSR's failure to recommend an upward departure based on under-representation of Vasquez's criminal history.

After hearing testimony and arguments, the district court found the government met its burden of proof with respect to the three-level enhancement based on Vasquez's managerial or supervisory role in the offense and with respect to the upward departure for under-representation of Vasquez's criminal history.  However, the district court found the government failed to meet its burden with respect to the obstruction of justice enhancement.

Based upon these rulings, the district court determined Vasquez's total offense level increased from 34 to 37 and his criminal history category increased from III to IV, making Vasquez's advisory Guidelines range 292 to 365 months imprisonment.  The district court sentenced Vasquez to two concurrent terms of 320 months imprisonment and ten years of supervised release.  Vasquez appeals the sentence.

## II.    DISCUSSION
### A.    Role Enhancement
Vasquez argues the district court erred in imposing a three-level role enhancement because the government failed to meet its burden of proof to show Vasquez exercised the requisite control, direction, or supervision over his co-conspirators to warrant the enhancement.  "We review for clear error the district court's factual findings underlying the imposition of a sentencing enhancement based

on the defendant's role in the offense." United States v. Rosas, 486 F.3d 374, 376 (8th Cir. 2007) (citing United States v. Carpenter, 422 F.3d 738, 748 (8th Cir. 2005)). "The [g]overnment has the burden of proving by a preponderance of the evidence that the aggravating role enhancement is warranted." United States v. Garcia-Hernandez, 530 F.3d 657, 665 (8th Cir. 2008) (citing United States v. Mesner, 377 F.3d 849, 851-52 (8th Cir. 2004)).

A defendant's offense level may be increased by three levels "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(b). "We construe the terms 'manager' or 'supervisor' broadly under U.S.S.G. § 3B1.1." United States v. Erhart, 415 F.3d 965, 973 (8th Cir. 2005) (citing United States v. Schwarck, 961 F.2d 121, 123 (8th Cir. 1992)). Application note 4 of U.S.S.G. § 3B1.1 sets forth the following factors to consider in determining whether a role enhancement is warranted:

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

At the sentencing hearing, the government called Smith to the stand, and Smith described how he first met Vasquez in the winter of 2006-2007 when Smith went to a house to purchase methamphetamine. During that meeting, Vasquez spoke in Spanish to another man before coming up with a price for the methamphetamine. Vasquez gave Smith his phone number, and Smith would call Vasquez when he wanted to purchase methamphetamine. Vasquez would set the price for the methamphetamine depending on the quantity and quality, and tell Smith where to meet him. Vasquez sometimes sold Smith "bunk dope," which was methamphetamine

that contained large amounts of MSM. Smith purchased approximately 8 ounces total of methamphetamine from Vasquez between the time of their first meeting and June 2007. Vasquez occasionally fronted methamphetamine to Smith, meaning Vasquez gave Smith methamphetamine when Smith was short on money with the understanding Smith would pay Vasquez for the methamphetamine at a later date.

In addition to Smith's testimony about his relationship with Vasquez, the government argued Feauto's and Davies's trial testimony supported the government's contention that Vasquez acted in a managerial or supervisory capacity. The government cited Davies's corroboration of Smith's account of his relationship with Vasquez. The government also cited to Feauto's testimony (1) Vasquez sold her drugs twenty-five or thirty times, (2) Feauto provided Vasquez with MSM, and (3) Feauto sold MSM to Vasquez's customers, so they would not blame Vasquez for the poor quality.

After hearing from both the government and Vasquez's counsel, the district court imposed a three-level role enhancement. The district court stated, "I think it's a very close question, but I find by a preponderance of the evidence that the government did meet its burden under [§] 3B1.1(b)." A review of the sentencing transcript demonstrates the district court weighed the evidence and counsel's arguments and considered the appropriate factors under U.S.S.G. § 3B1.1. Although this issue does present a close question, we conclude the government presented sufficient evidence, when considered in its totality, to meet its burden of proof. Thus, the district court's imposition of a three-level role enhancement was not clearly erroneous.

## B.    Upward Departure

Vasquez also contends the district court erred in departing upward on the basis that Vasquez's criminal history was under-represented because Vasquez's "record, on balance, was not so egregious as to warrant rejection of the guidelines' criminal history placement."    "We review for abuse of discretion any departures from the advisory sentencing Guidelines."  United States v. Rouillard, 474 F.3d 551, 555 (8th Cir. 2007) (citing United States v. Mashek, 406 F.3d 1012, 1017 (8th Cir. 2005)) (considering a district court's upward departure based on under-representation of criminal history).

"Upward departures under § 4A1.3(a) are applicable if 'reliable information indicates the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes.'"  United States v. Mosby, 543 F.3d 438, 441-42 (8th Cir. 2008) (quoting U.S.S.G. § 4A1.3(a)(1)).   "When contemplating and structuring such a departure, the district court should consider both the nature and extent of a defendant's criminal history."  United States v. Hacker, 450 F.3d 808, 812 (8th Cir. 2006) (citing United States v. Gonzales-Ortega, 346 F.3d 800, 802 (8th Cir. 2003)).   "In deciding the likelihood that a defendant may commit other crimes, a court may 'take into account any "evidence of obvious incorrigibility"' and 'conclude that . . . leniency has not been effective.'"  United States v. Herr, 202 F.3d 1014, 1016 (8th Cir. 2000) (quoting United States v. Goings, 200 F.3d 539, 542 (8th Cir. 2000)).

The PSR indicates Vasquez accumulated seven criminal history points; however, pursuant to U.S.S.G. § 4A1.1(c), only four points were assessed.  In addition to these four points, Vasquez accumulated two additional points because he was on probation in Missouri state court at the time he committed the offenses relevant to this appeal.   Vasquez's six criminal history points translated into a criminal history category of III.   Vasquez made only a blanket objection to the factual statements appended to the criminal history entries in the PSR.  To preserve an objection to any

of the PSR factual statements, Vasquez should have made an objection to a specific factual allegation. See United States v. Wintermute, 443 F.3d 993, 1005 (8th Cir. 2006) (quoting United States v. Sorrells, 432 F.3d 836, 838 (8th Cir. 2005)) ("A sentencing court may accept the facts in a PSR as true unless the defendant objects to specific factual allegations.").

After hearing arguments from both sides at the sentencing hearing, the district court imposed an upward departure, explaining,

> Well, I think the government's met its burden of proof because I think the criminal history substantially underrepresents the likelihood that the defendant will commit further crimes. He had a conviction in '04 theft conviction. Then he gets another conviction just a little over a year later in '05. Then he has [an] assault conviction in '05. Then in '06 he has a contempt, another contempt in '06, a drug conviction in '06, another assault in '07 and then the eluding which was part of the instant offense. But, you know, if you look at '04, he doesn't go barely a year without committing crimes, and then he has multiple convictions in '05, '06, and '07.
>
> And if you just look at it, he's got -- he's got theft convictions, multiple assault convictions, multiple contempt, a drug conviction. He doesn't look like a criminal history category [III] to me. And so I think it is substantially underrepresented. And so I'm going to raise his criminal history from a category [III] to a category [IV].

After reviewing the record, we are satisfied the district court considered the appropriate factors and gave an adequate explanation for its decision to impose an upward departure. Vasquez committed seven offenses in a span of less than four years. The most recent offenses were committed while Vasquez was on probation in Missouri state court. We agree with the district court that Vasquez's criminal history record indicates a strong likelihood he will commit future crimes. Thus, the district

court did not abuse its discretion in increasing Vasquez's criminal history category from III to IV.

### III.    CONCLUSION

We affirm Vasquez's sentence and the district court's judgment.

_____