# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-2232

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Northern |
| | * | District of Iowa. |
| Benjamin Franklin Moore, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: November 16, 1999

Filed: May 15, 2000

_____

Before RICHARD S. ARNOLD, JOHN R. GIBSON, and BEAM, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

Benjamin Franklin Moore appeals convictions following a jury trial for possession with intent to distribute cocaine base and being a felon in possession of a firearm and ammunition. Moore argues on appeal that: (1) his two convictions were not supported by sufficient evidence; (2) the district court committed clear error in assessing 14 and 31.8 grams of cocaine base to him in determining his base offense level at sentencing; and (3) the district court committed clear error in assessing a two-level enhancement to his base offense level for possessing a dangerous weapon. We

reverse the district court with regard to the 31.8 grams of cocaine base it assessed to Moore in determining his base offense level, but affirm in all other respects.

On March 20, 1996, members of a law enforcement Special Response Team executed a search warrant in an apartment in Cedar Rapids, Iowa. Officers found Moore in the south bedroom on the second floor of the apartment, at the foot of the bed. In the room, officers also found a semiautomatic handgun and loaded magazine between the mattresses of the bed by which Moore was found, as well as at least one scale, two beepers, and approximately $2780 in cash. In Moore's pocket, officers found 3.33 grams of cocaine base. Documents related to Moore were also found in the apartment. After Moore was read his Miranda[1] rights, he stated that he was staying there with his girlfriend, Hilary Hobbs, who lived in the apartment with David Taylor, and he admitted he owned the gun found in the south bedroom.

At trial, Moore admitted purchasing the 3.33 grams of cocaine base from Taylor for $130; however, he testified that he never intended to distribute it. In an attempt to establish that Moore did intend to distribute the cocaine base, the prosecution introduced the testimony of a convicted felon, currently serving a drug sentence of his own. That witness testified that he had personally bought fifteen to twenty grams of cocaine base from Moore in half-gram quantities over the course of about four months.

## I.

Moore claims that the government failed to present sufficient evidence to support his convictions. "In reviewing the sufficiency of the evidence, we look at the evidence in the light most favorable to the verdict and accept as established all reasonable inferences supporting the verdict. We will not overturn a verdict unless the evidence is such that a reasonable juror must have a reasonable doubt regarding the existence of

---

[1]Miranda v. Arizona, 384 U.S. 436 (1966).

one of the essential elements of the crime." United States v. Behr, 33 F.3d 1033, 1035 (8th Cir. 1994) (citations omitted). See Glasser v. United States, 315 U.S. 60, 80 (1942).

## A.

It is "unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." 21 U.S.C. § 841(a)(1) (1994). Moore does not contest that he knowingly possessed 3.33 grams of cocaine base, a Schedule II controlled substance. 21 U.S.C. § 812(c) (1994); see United States v. Dukes, 147 F.3d 1033, 1033 (8th Cir. 1998), cert. denied, 525 U.S. 1084 (1999). However, he argues that the evidence was not sufficient to show his intent to distribute it.

We have previously addressed the evidence necessary to demonstrate that a defendant had the intent to distribute a controlled substance.

> [I]ntent to distribute may be established by circumstantial evidence, including such things, as quantity, purity and presence of firearms, cash, packaging material, or other distribution paraphernalia. Moreover, we recognize that intent to distribute may be inferred solely from the possession of large quantities of narcotics. However, proof of possession of a small amount of a controlled substance, standing alone, is an insufficient basis from which an intent to distribute may be inferred. The underlying theme of such cases is that the defendant possessed a quantity which was more than he would possess for his own use.

United States v. Lopez, 42 F.3d 463, 467 (8th Cir. 1994) (internal quotations and citations omitted).

At trial, Moore testified to the following: (1) he was not living at the apartment at the time of the search; (2) the officers found him in a hallway in the apartment, rather

than the south bedroom; (3) he was not read his <u>Miranda</u> rights before being interviewed at the scene; (4) during the search, he told Larison that he did not live in the apartment, but said nothing about the gun; (5) he did not own or possess a pager at the time of the search; and (6) he did not intend to distribute the 3.33 grams of cocaine base. At least two government witnesses agreed that 3.33 grams of cocaine base could be a personal use amount.

The government presented evidence that conflicted with Moore's and tended to demonstrate his intent to distribute the 3.33 grams of cocaine base. First, Detective Douglas Larison of the Cedar Rapids Police Department testified that, after he gave Moore <u>Miranda</u> warnings, Moore admitted in an interview conducted during the search that he was staying in the apartment with Taylor and Hobbs and that he owned the gun found between the mattresses of the bed in the south bedroom. From these admissions, the jury could reasonably conclude that Moore was residing in the south bedroom. Second, Greg Burgman, an Iowa Division of Narcotics Enforcement Agent who was working for the Drug Enforcement Administration at the time of the search, testified that officers found at least one scale, two beepers, and approximately $2780 in cash in the south bedroom. Burgman also testified that documents related to Moore were found in the apartment as well. Third, Moore admitted at trial that he knowingly possessed the 3.33 grams of cocaine base. And finally, a government witness, serving time for his own drug conviction, testified that Moore had sold him fifteen to twenty grams of cocaine base in half-gram quantities over the course of about four months. This evidence, taken in the light most favorable to the prosecution, is more than sufficient to allow a reasonable juror to find that Moore intended to distribute the cocaine base he possessed at the time of the search.

**B.**

To obtain a conviction under 18 U.S.C. § 922(g)(1) (1994), the prosecution must "prove beyond a reasonable doubt that (1) the defendant has previously been convicted

of a crime that was punishable by a term of imprisonment exceeding one year, (2) the defendant knowingly possessed a firearm, and (3) the firearm has been in or has affected interstate commerce." United States v. Taylor, 122 F.3d 685, 688 (8th Cir. 1997). Moore argues the evidence adduced at trial was insufficient to support his conviction on this count.

Moore points to the following facts: (1) his name was not on the lease to the apartment where the gun was found; (2) the utilities for that apartment were also not in his name; (3) there were no fingerprints taken from the gun; (4) at trial, he denied owning or possessing the gun, and denied admitting the same to any agent during the search; (5) no witness had ever seen him possess or use the gun; and (6) no papers were introduced at trial showing the gun to be registered to him. There is, however, sufficient contrary evidence from which a reasonable juror could have found Moore guilty beyond a reasonable doubt of violating § 922(g)(1).

Though the gun was not found on Moore's person, but rather was found between the mattresses of the bed by which he was standing, "[p]ossession may be either actual or constructive," and "[c]onstructive possession exists when a person has ownership, dominion, or actual control over the contraband." United States v. Anderson, 78 F.3d 420, 422 (8th Cir. 1996). Larison testified that Moore admitted owning the gun after Larison advised Moore of his Miranda rights. This testimony was sufficient evidence of constructive possession for a reasonable juror to find Moore guilty beyond a reasonable doubt of being a felon in possession of a firearm in violation of § 922(g)(1). "It is not our province on appeal to 'reweigh the evidence or judge the credibility of witnesses when reviewing the sufficiency of the evidence.'" Id. (quoting United States v. Nururdin, 8 F.3d 1187, 1194 (7th Cir.1993)). Therefore, we affirm Moore's conviction on this count as well.

**II.**

Moore next challenges the district court's assessment of drug quantities not included in the count of conviction in determining his base offense level at sentencing. "The district court's interpretation of the Sentencing Guidelines is a question of law subject to de novo review, while its factual determinations are subject to review only for clear error." United States v. Larson, 110 F.3d 620, 627 (8th Cir. 1997). The district court's finding as to drug quantities for sentencing purposes is a factual determination which we review for clear error. See United States v. Ayers, 138 F.3d 360, 363 (8th Cir. 1998). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948).

Our starting point is Section 1B1.3(a) of the United States Sentencing Guidelines Manual (Nov. 1995), which states as follows:

Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level, . . . shall be determined on the basis of the following:

(1)  (A)  all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or wilfully caused by the defendant; and

(B)  in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity,

that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense; . . . .

## A.

Moore first argues that the district court clearly erred in assessing fourteen grams of cocaine base to him in determining his base offense level. The district court attributed this amount of cocaine base to Moore based on a government witness who testified at trial that he had bought fifteen to twenty grams of cocaine base from Moore between about July 1995 to November of that year.

When a defendant is convicted of drug distribution, amounts and types of drugs not set forth in the count of conviction are properly included in the offense level calculation if they constituted "part of the same course of conduct or part of a common scheme or plan as the count of conviction." United States v. Sleet, 893 F.2d 947, 949 (8th Cir. 1990). In making such a determination, the district court "should consider the similarity, regularity, and temporal proximity of the conduct." United States v. Geralds, 158 F.3d 977, 979 (8th Cir. 1998) (internal quotations and citation omitted), cert. denied, 526 U.S. 1031 (1999). We reverse such a factual determination only if clearly erroneous. Id.

The 1995 transactions are sufficiently connected to the charged offense to constitute the "same course of conduct," as they also involved the sale of cocaine base in the same city as the charged drug offense and occurred just four to six months earlier. Although Moore argues that the government witness who testified as to the 1995 transactions was simply testifying in hopes of having his current sentence reduced and should not be believed, "[a] district court's findings as to the credibility of a witness are virtually unreviewable on appeal." United States v. Adipietro, 983 F.2d

1468, 1472 (8th Cir. 1993) (internal quotations and citations omitted). "The district court is free to believe all, some, or none of the witness's testimony." United States v. Carter, 997 F.2d 459, 461 (8th Cir. 1993).

**B.**

Moore has a much more powerful argument that the district court clearly erred in assessing 31.8 grams of cocaine base to him in determining his base offense level. The only evidence that even remotely connects Moore to that quantity of drugs is that it was possessed by Taylor, from whom he bought the 3.33 grams of cocaine base that formed the basis of his conviction.

Merely purchasing drugs from someone for resale does not demonstrate that the sale of all drugs remaining in the seller's possession is an activity jointly undertaken between the seller and the buyer. Nor is such a purchase, standing alone, demonstrative of the buyer's aiding or abetting the seller in the distribution of the remainder of the seller's inventory. As we stated in United States v. Jones, 965 F.2d 1507, 1517 (8th Cir. 1992), "Simply because a defendant knows that a dealer he works with sells large amounts of drugs to other people does not make the defendant liable for the dealer's other activities." Even assuming that the court found Moore to have resided in the apartment with Taylor at the time of the search, that finding would not tilt the scales sufficiently to warrant a finding that Moore and Taylor jointly undertook to sell the 31.8 grams of cocaine base or that Moore aided or abetted Taylor in such an objective. Therefore, the district court clearly erred in assessing 31.8 grams of cocaine base to Moore in determining his base offense level.

**III.**

Last, Moore argues that the district court improperly imposed a two-level enhancement to his base offense level for possessing a dangerous weapon. See U.S.

Sentencing Guidelines Manual, § 2D1.1(b)(1) (Nov. 1995). "For the enhancement to apply, the government is required to prove by a preponderance of the evidence that a weapon was present and that it was at least probable that the weapon had a nexus with the criminal activity." United States v. Newton, 184 F.3d 955, 957 (8th Cir. 1999). We will uphold the district court's determination, unless clearly erroneous. See Newton, 184 F.3d at 957.

The government must first establish that Moore possessed the weapon. Detective Larison testified at trial that, during his interview with Moore at the apartment, Moore admitted to owning the gun found between the mattresses in the south bedroom. This testimony was sufficient for the district court to find that Moore possessed the gun, as ownership establishes constructive possession. See United States v. Brown, 148 F.3d 1003, 1009 (8th Cir. 1998), cert. denied, 525 U.S. 1169 (1999).

The government must then establish a nexus "by showing the existence of a temporal and spatial relation between the weapon, the drug trafficking activity, and the defendant." Newton, 184 F.3d at 958. However, mere presence of the weapon is not enough to support an enhancement. See United States v. Betz, 82 F.3d 205, 210 (8th Cir. 1996). There is sufficient evidence to connect the gun to Moore's drug dealings under the applicable standard. First, the gun was found in a room which the court could reasonably conclude he occupied, and that room contained at least one scale, two beepers, and approximately $2780 in cash. The presence of these articles supports the conclusion that at least part of Moore's drug activities were conducted in that room, and that the gun was also used in connection with those activities. As we have said before, "[F]irearms are tools of the drug dealer's trade." Betz, 82 F.3d at 211 (internal quotations and citation omitted). Second, Detective Larison testified that Moore told him he owned the gun to protect himself against those who wanted to get him. The district court might reasonably have concluded that those people were others involved in the drug trade, as "people who are dealing in drugs frequently use dangerous weapons, or have possession of dangerous weapons, for the purposes of protecting

-9-

their bounty." Id. These two pieces of evidence, taken together, lead us to conclude that the court did not clearly err in determining it was at least probable that the weapon was connected to Moore's drug conviction, and we affirm the two-level enhancement under § 2D1.1(b)(1).

*    *    *

We affirm the convictions, but we vacate the district court's assessment of 31.8 grams of cocaine base to Moore in determining his base offense level. We remand for resentencing in accordance with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.