# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-2789

_____

United States of America,

              Appellee,

v.

Carlos M. Holmes,

              Appellant.

Appeal from the United States
District Court for the
Eastern District of Missouri.

[PUBLISHED]

_____

Submitted: April 12, 2010
Filed: September 2, 2010

_____

Before LOKEN, HANSEN, and MELLOY, Circuit Judges.

_____

HANSEN, Circuit Judge.

Carlo Holmes[1] appeals his convictions, following a jury trial, for being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1) (Count 1), and for possessing with intent to distribute in excess of five grams of crack cocaine, 21 U.S.C. § 841(a)(1) (Count 2). Holmes raises a Confrontation Clause challenge to the admission of statements by a confidential informant through another witness, and he asserts that the Government's evidence was insufficient to establish his guilt on both counts, entitling

_____

[1]The caption lists the defendant's first name as "Carlos," but we use "Carlo," as used by both parties throughout this litigation and appeal.

him to a judgment of acquittal.  We affirm the drug conviction under Count 2, but we reverse and remand the felon-in-possession conviction under Count 1.

I.

Holmes was arrested during an attempt by the St. Louis Metropolitan Police Department to execute a search warrant on a residence located at 4458 Anderson Avenue in St. Louis, Missouri.  Officer Robert Singh obtained the search warrant based on a tip by a confidential informant (CI) that Holmes was selling drugs from the residence, coupled with surveillance Officer Singh conducted to verify the tip. Officer Singh verified that the mother of Holmes' children lived at the residence with his children, and he observed Holmes at the residence on two different occasions while performing surveillance of the residence.  On both occasions, Officer Singh observed Holmes engage in conduct consistent with selling drugs to individuals who stopped at the residence for a short period of time.

After obtaining the search warrant, Officer Singh drove by the residence prior to attempting to execute it and saw Holmes outside.  Officer Singh met with other officers to stage the execution of the search warrant, but Holmes left in a car prior to their approach to the house.  Officers in unmarked vehicles followed Holmes until he stopped and got out of the car.  Upon seeing Officer Singh exit his vehicle and realizing he was a police officer, Holmes dropped a baggie containing over six grams of crack cocaine and ran.  Officers pursued and caught Holmes.

Officer Singh arrested Holmes and read him his Miranda[2] rights, after which Holmes told Officer Singh that he first thought he was being followed by rival gang members, but then he ran when he realized it was the police because he had crack cocaine.  Holmes provided Officer Singh with a key to the Anderson Avenue

---

[2]Miranda v. Arizona, 384 U.S. 436 (1966).

residence, and the officers returned and conducted a search, using the key to enter the unoccupied house. During the search, officers recovered a revolver, a sawed off shotgun, a .40 caliber magazine for a semi-automatic handgun, drug paraphernalia, and surveillance equipment.

Officer Singh questioned Holmes at the police station about the guns and the equipment found at the residence. Holmes told Officer Singh that he had the guns for protection from a rival gang, a member of which had shot his cousin a few weeks earlier. Officers verified the shooting in their reporting system and verified the violence between the rival gangs mentioned by Holmes.

Holmes proceeded to trial on the drug and firearm charges, focusing his defense on his claim that he did not live at the Anderson Avenue residence that was the focus of the investigation and search warrant. A jury convicted him of both counts, and Holmes received a sentence of 120 months, the statutory mandatory minimum sentence on the drug count. Holmes appeals his convictions.

II.

"The Confrontation Clause bars 'admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination.'" United States v. Spencer, 592 F.3d 866, 878 (8th Cir. 2010) (quoting Crawford v. Washington, 541 U.S. 36, 53-54 (2004)). We review *de novo* Holmes' constitutional challenge. See id. During trial, the Government asked Officer Singh on redirect examination to read from the search warrant application concerning statements told to Officer Singh by a CI. Holmes challenges that evidence as violating his right to confront the witnesses against him—namely the CI—as secured by the Confrontation Clause of the Sixth Amendment. The CI did not appear at trial, and Holmes did not have a prior opportunity to cross-examine the CI.

Part of Holmes' defense at trial was that he did not live at the house where the guns were found and that was the target of the investigation, and he tried to create reasonable doubt about his connection to the activities at the house. At the time of his arrest, Holmes was living at the St. Louis Community Release Center (a halfway house), and he was released daily to attend work. During the trial, Holmes' attorney questioned Officer Singh on cross-examination about his knowledge of Holmes' connection to the Anderson Avenue residence. At one point, defense counsel asked Officer Singh, "So the only information that you had was this CrimeMATRIX information based upon his prior arrests." (Trial Tr. vol. I at 146.) Officer Singh responded, "And the information that I received." (Id.)

On redirect, the Government attempted to establish that Officer Singh had received information connecting Holmes to the Anderson Avenue residence, and the prosecuting attorney asked Officer Singh to read from the affidavit he had prepared to accompany the application for a search warrant. As soon as Officer Singh read, "The CI informed me that there was a black male with the nickname of Carlo" (id. at 177), Holmes' counsel objected as violating Holmes' rights to confrontation. The district court overruled the objection, noting that Holmes' counsel had opened the door to evidence of what information the officer had connecting Holmes to the residence. Officer Singh then read several paragraphs from the affidavit into the record. As it pertains to information received from the CI, Officer Singh read the following:

> The CI informed me that there is a black male with a nickname of Carlo distributing crack cocaine and cocaine from his residence located at 4458 Anderson, and is in possession of a handgun. The CI described Carlo as a black male approximately 25 to 30 years of age, approximately five feet nine inches tall to six feet tall, slim build, and having a light complexion.

(Id. at 178-79.) The Government asked Officer Singh to read other paragraphs, including, in relevant part, "The CI was shown a picture of Carlo Holmes and verified

him as being Carlo," (<u>id.</u> at 179), and "On today's date, August 12, 2008, I was contacted by the CI who stated that they had been inside of 4458 Anderson within the past 24 hours. The CI stated that they observed Carlo in possession of crack cocaine, cocaine, and a handgun," (<u>id.</u> at 180).

As made clear in <u>Crawford</u>, the Confrontation Clause applies only to testimonial hearsay statements. <u>Crawford</u>, 541 U.S. at 51 ("This focus [on testimonial statements] also suggests that not all hearsay implicates the Sixth Amendment's core concerns."). "It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause." <u>Davis v. Washington</u>, 547 U.S. 813, 821 (2006). Testimonial statements include statements made in the course of police interrogation where the "primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." <u>Id.</u> at 822. The statements made by the CI to Officer Singh that led to Officer Singh's further investigation of Holmes clearly fall within the class of statements considered testimonial. <u>See</u> <u>United States v. Lopez-Medina</u>, 596 F.3d 716, 730 (10th Cir. 2010) ("A confidential informant's statements to a law enforcement officer are clearly testimonial.").

<u>Crawford</u> is also limited to hearsay evidence—that is, evidence offered to prove the truth of the matter asserted. <u>See</u> <u>Spencer</u>, 592 F.3d at 879 (explaining that "[s]tatements providing context for other admissible statements are not hearsay because they are not offered for their truth," and thus their admission "does not offend the Confrontation Clause because the declarant is not a witness against the accused" (internal marks omitted)). The Government argues that Officer Singh's statements concerning what the CI told him are not hearsay because they were offered to show Officer Singh's knowledge and to establish the propriety of the investigation, not for the truth of what the CI said. We have said that out-of-court statements are not hearsay if they are offered "'to explain the reasons for or propriety of a police

investigation.'" United States v. Malik, 345 F.3d 999, 1001 (8th Cir. 2003) (quoting United States v. Davis, 154 F.3d 772, 778 (8th Cir. 1998)). This type of evidence will be allowed into evidence to explain a police investigation, however, only when the propriety of the investigation is at issue in the trial. Id. at 1001-02; see also United States v. Maher, 454 F.3d 13, 22 (1st Cir. 2006) ("The [G]overnment's articulated justification—that any statement by an informant to police which sets context for the police investigation is not offered for the truth of the statement and thus not within Crawford—is impossibly overbroad" and has an "added bite" where it is used in an attempt "to circumvent Crawford's constitutional rule"); United States v. Silva, 380 F.3d 1018, 1020 (7th Cir. 2004) ("Allowing agents to narrate the course of their investigations, and thus spread before juries damning information that is not subject to cross-examination, would go far toward abrogating the defendant's rights under the [S]ixth [A]mendment and the hearsay rule.").

In this case, the Government had the burden of establishing beyond a reasonable doubt that Holmes possessed cocaine with the intent to distribute it and that he was a felon in possession of a firearm. During trial, Holmes attempted to distance himself from the Anderson Avenue house by questioning what evidence Officer Singh had that tied Holmes to the residence when he was investigating drug transactions at that location. Holmes did not challenge the validity of the search warrant, however, and the propriety of the investigation was never really at issue. To the extent Officer Singh's knowledge of a connection between Holmes and the residence was at issue, a question asking whether someone had told him that he had seen Holmes at the residence would have addressed the issue raised during the cross examination without the need to go into the damning details of what the CI told Officer Singh. See, e.g., Maher, 454 F.3d at 23 (noting that the testifying officer could have stated only that "he acted on information received," rather than testifying that the CI told him the defendant was a drug dealer); United States v. Cromer, 389 F.3d 662, 677 (6th Cir. 2004) (concluding that an officer's testimony that "she 'had information'" about a residence that led to an investigation was admissible as assisting the jury to

understand the background of the investigation). But here the detailed statements read into the record from the search warrant affidavit went well beyond establishing the propriety of the investigation, and they were certainly offered to establish their truth—to show that Holmes sold drugs from the Anderson Avenue residence and that he possessed guns while he was at the residence where the guns were found. See Maher, 454 F.3d at 23 ("It appears the testimony was primarily given exactly for the truth of the assertion that [the defendant] was a drug dealer and should not have been admitted given the adequate alternative approach."); Cromer, 389 F.3d at 676 (holding that statement from a confidential informant identifying the defendant as someone who sold drugs from a particular residence "could only have been [offered] to help establish that the person nicknamed 'Nut' . . . had been involved with the illegal drug activity"). The statements from the affidavit read by Officer Singh did more than merely explain the background of Officer Singh's investigation, and admission of the statements violated Holmes' constitutional right to confront the witnesses against him under the Confrontation Clause.

The Government argues that even if the statements were testimonial hearsay subject to the Confrontation Clause, Holmes waived his constitutional rights by opening the door to the information during the cross-examination of Officer Singh. On cross-examination, Holmes' counsel questioned how Officer Singh was able to connect Holmes to the residence, at one point asking Officer Singh if he had any information beyond that provided by the CrimeMATRIX database. Officer Singh responded to that question by stating, "And the information that I received." (Trial Tr. vol. I at 146.) On redirect, the Government asked Officer Singh to read from the search warrant affidavit, and Holmes' counsel objected. At a sidebar conference, Holmes' counsel stated, "You [sic] going to tell me I opened the door to this?" (id. at 177), and he objected "because it's information on the confidential informant and it violates my guy's rights to confrontation" (id. at 178). The Government responded that Holmes had opened the door by asking about what information Officer Singh had connecting Holmes to the residence, including whether Officer Singh had done a

utility check and what information he had received from the CrimeMATRIX system, both of which also raised confrontation issues. The district court overruled the objection, and Holmes' counsel did not further object to any of the statements subsequently read from the affidavit.

Defendants can waive their constitutional rights, including the right to confront the witnesses against them as protected by the Sixth Amendment. See United States v. Lee, 374 F.3d 637, 649-50 (8th Cir. 2004) (noting that a defendant can waive his confrontation rights by pleading guilty, by stipulating to the admission of evidence, by absenting himself from trial, and by engaging in misconduct or disruptive behavior). Counsel can waive a defendant's right to confrontation as long as the decision is made for tactical reasons and the defendant is aware of the waiver and does not object. Id. at 650. Counsel's decision to waive a defendant's confrontation rights must be done intentionally and for valid, tactical purposes in order to satisfy the requirement that the waiver of a constitutional right must be clear and intentional. See id. at 649 ("A waiver of constitutional rights is effective if it is clear and intentional."); Lopez-Medina, 596 F.3d at 731 ("Because there is a presumption against the waiver of constitutional rights, for a waiver to be effective it must be clearly established that there was an intentional relinquishment or abandonment of a known right or privilege." (internal marks omitted)).

The Tenth Circuit recently faced a nearly identical issue in Lopez-Medina, where a defendant challenged on appeal the introduction of statements made by a confidential informant to a testifying police officer during the Government's redirect of the officer. The record in that case clearly established the defense counsel's intent to waive the right to confrontation. During cross-examination of the officer, the Government requested a sidebar after the defense asked the officer how he came to know certain information. Defense counsel stated to the court, "I think, Your Honor, [the Government is] worried I am going to bring in the confidential informant information. That's my full intention. I don't care what door we open. If I open a

door, please feel free to drive into it." Id. The defense counsel proceeded to ask about specific information provided by the confidential informant. On redirect, the Government further questioned the officer about the confidential informant's statements. Addressing the defendant's Confrontation Clause challenge, the Tenth Circuit concluded that where the defense first elicited specific information about statements made by a confidential informant and explicitly stated his intention to bring in the information despite the right to confrontation, the defendant had waived his right to challenge testimony elicited by related questions on redirect. Id. at 732.

Whether Holmes' attorney made the explicit and intentional decision to waive Holmes' confrontation rights is not nearly as clear-cut as was the waiver in Lopez-Medina. Here, once the Government sought specific statements by the confidential informant, Holmes' counsel objected and argued at a sidebar conference that he had not opened the door to the CI's statements. While our court has recognized that otherwise inadmissible hearsay can be allowed to clarify or rebut evidence introduced by the defendant on the basis that the defendant opened the door to the evidence, see United States v. Jumping Eagle, 515 F.3d 794, 801 (8th Cir. 2008) ("[W]e have allowed the use of otherwise inadmissible evidence, including hearsay statements, to clarify, rebut, or complete an issue opened up by defense counsel on cross-examination."), we are mindful that we are facing a constitutional challenge to the admission of the statements rather than a challenge based on evidentiary rules, cf. Crawford, 541 U.S. at 61 ("Where testimonial statements are involved, we do not think the Framers meant to leave the Sixth Amendment's protection to the vagaries of the rules of evidence . . . ."); United States v. Urqhart, 469 F.3d 745, 748 (8th Cir. 2006) ("The Supreme Court in Crawford, however, noted that laws of evidence do not define the parameters of the Confrontation Clause."). We agree with the Tenth Circuit that Crawford did not change the rule that a defendant can waive his right to confront witnesses by opening the door "to the admission of evidence otherwise barred by the Confrontation Clause." Lopez-Medina, 596 F.3d at 733. But as previously noted, that waiver must be "clear and intentional." Lee, 374 F.3d at 649; see also Lopez-Medina,

596 F.3d at 732 (agreeing with the Fifth Circuit in United States v. Acosta, 475 F.3d 677 (5th Cir. 2007), that otherwise inadmissible testimony can become admissible if the defendant opens the door to it with the qualification "at least where there is an explicit waiver").

Our review of the record convinces us that neither Holmes nor his attorney on his behalf made a clear and intentional waiver of Holmes' rights to confrontation that would allow the full extent of the CI's statements read by Officer Singh. Contrary to the actions of defense counsel in Lopez-Medina, Holmes' counsel clearly did not intend to bring in the CI's statements during his cross-examination, and he objected to the Government's redirect on the basis that he had not opened that door. To the extent he opened the door by asking questions of Officer Singh on cross-examination in an attempt to give the jury the impression that Officer Singh had no information tying Holmes to the Anderson Avenue residence, he did not open the door so wide as to allow Officer Singh to recite the full extent of the statements from the CI implicating Holmes in selling drugs and possessing firearms. See United States v. Pugh, 405 F.3d 390, 400 (6th Cir. 2005) (concluding that the defendant's actions of opening the door about the testifying detective's motive for transporting a nontestifying witness from jail to the police station for questioning did not justify asking the detective if that witness identified the defendant in a photo lineup as one of the robbers); cf. United States v. Cruz-Diaz, 550 F.3d 169, 178 (1st Cir. 2008) ("Generalized testimony limited to an explanation such as 'we stopped investigating because of information received,' without any context, would not have sufficiently rebutted [defendant's] line of questioning. While there can be circumstances under which Confrontation Clause concerns prevent the admission of the substance of a declarant's out-of-court statement where a less prejudicial narrative would suffice in its place, this is not such a case."). Holmes did not open the door to the long narrative read by Officer Singh, and the admission of the statements violated Holmes' Confrontation Clause rights.

A nonwaived Crawford violation is subject to a harmless error analysis, under which we assess whether the Constitutional violation was harmless beyond a reasonable doubt. See Lee, 374 F.3d at 643-44. Evidence erroneously admitted in violation of the Confrontation Clause is harmless beyond a reasonable doubt as long as the remaining evidence is overwhelming. See United States v. Wells, 347 F.3d 280, 290 (8th Cir. 2003) ("When the evidence of a defendant's guilt is overwhelming, appellate courts have held that violations of the [C]onfrontation [C]lause by the admission of hearsay statements are harmless beyond a reasonable doubt." (internal marks omitted)). "Whether the error was harmless beyond a reasonable doubt 'must . . . be determined on the basis of the remaining evidence' rather than whether the jury's assessment or the witness's testimony would have changed in the absence of the error." United States v. Jacobs, 97 F.3d 275, 283 (8th Cir. 1996) (quoting Coy v. Iowa, 487 U.S. 1012, 1022 (1988)) (ellipses in original). We thus consider the remaining evidence introduced at trial.

The Government provided overwhelming independent evidence to establish that Holmes possessed with the intent to distribute at least five grams of crack cocaine. See United States v. Weaver, 554 F.3d 718, 721 (8th Cir. 2009) (elements of offense include that defendant knowingly possessed a controlled substance and intended to distribute it). Officer Singh followed Holmes and was exiting his vehicle when he saw Holmes throw a plastic bag containing over six grams of crack cocaine on the ground. The bag of cocaine was recovered and introduced at trial. Officer Singh also testified that Holmes told him he ran when he realized he was being followed by police officers because he had crack cocaine. The parties read several stipulations into the record, including a statement by the Government's expert that six grams of crack cocaine was a "distributable amount of cocaine base, crack" (Trial Tr. vol. II at 33-34), and that Holmes had four prior convictions, including three convictions for distributing crack cocaine and one for possessing cocaine. Officer Singh testified that he observed Holmes outside of the Anderson Avenue home on two occasions engaging in actions consistent with drug trafficking.

-11-

This overwhelming evidence, independent of the CI's statements from the search warrant application, established that Holmes possessed with the intent to distribute at least five grams of crack, and the Confrontation Clause violation was therefore harmless beyond a reasonable doubt as to Count 2. See United States v. Parish, 606 F.3d 480, 488 (8th Cir. 2010) (concluding that any Confrontation Clause violation arising from officer's testimony that CI told him a drug transaction would occur at the address where defendant was arrested was harmless beyond a reasonable doubt where drugs, a digital scale, and a loaded firearm were located in the vehicle defendant was driving when he was arrested); United States v. Foreman, 588 F.3d 1159, 1163 (8th Cir. 2009) (concluding that erroneous admission of evidence in violation of Confrontation Clause was harmless beyond a reasonable doubt, noting that the evidence, "while no doubt helpful to the Government's case, was not essential to it," and remaining evidence established guilt beyond a reasonable doubt); United States v. Williams, 429 F.3d 767, 774 (8th Cir. 2005) (concluding that remaining evidence was overwhelming, and admission of evidence in violation of Confrontation Clause harmless, where DEA agents observed defendant at two locations engaging in activity "consistent with drug trafficking" and observed him give a package to a codefendant who was later stopped and found with drugs in his car, and drugs were found in hotel room containing defendant's driver's license). This overwhelming evidence also forecloses Holmes' challenge to the sufficiency of the evidence on the drug count. See United States v. Moore, 212 F.3d 441, 444-45 (8th Cir. 2000) (conviction will not be overturned on sufficiency of the evidence challenge unless "a reasonable juror must have [had] a reasonable doubt regarding the existence of one of the essential elements of the crime" (internal marks omitted)).

The only contested issue at trial concerning the charge of being a felon in possession of a firearm was whether Holmes knowingly possessed the firearm; he stipulated that he was a felon and that the firearms had moved in interstate commerce. See United States v. Collier, 527 F.3d 695, 701 (8th Cir. 2008) (elements of the offense). Possession for purposes of being a felon in possession of a firearm may be

either actual or constructive. See Moore, 212 F.3d at 445. "Constructive possession exists when a person has ownership, dominion, or actual control over the contraband." Id. (internal marks omitted). Disregarding the CI's statements that he had seen Holmes at the Anderson Avenue house on two occasions in possession of a firearm, the remaining evidence related to whether Holmes knowingly possessed a firearm included: officers recovered a key to the Anderson Avenue house from Holmes when he was arrested, which they used to enter the house and execute the warrant; officers discovered a revolver and a sawed off shotgun in the house, along with mail addressed to Holmes (postmarked four months earlier) and pictures of Holmes; Officer Singh testified that he had seen Holmes at the residence on two occasions, once answering the door from inside the residence; Officer Singh testified that Holmes admitted to him that the guns were his for protection from a rival gang who had recently shot his cousin; and officers corroborated the recent shooting. Holmes testified at trial that the guns were not his and that he was never questioned about the guns. Although Holmes had a key to the residence and was seen there by Officer Singh, Holmes' witnesses testified that he did not live at the residence and was rarely there because he did not get along with his ex-girlfriend, who did live at the residence.

We conclude that this evidence is sufficient to overcome a challenge to the sufficiency of the evidence to support Holmes' conviction on the felon-in-possession charge. Holmes had a key to the house and was seen at the house, and he admitted to Officer Singh that the guns were his, giving a reason corroborated by the officers. See id. (rejecting sufficiency challenge where Government had little evidence linking defendant to the house where the gun was found, but defendant's admission of ownership to officer supported conviction).

However, whether evidence improperly admitted in violation of the Confrontation Clause is harmless beyond a reasonable doubt is a stricter standard. See United States v. Chapman, 345 F.3d 630, 635 (8th Cir. 2003) (Confrontation Clause violation is harmless beyond a reasonable doubt if "'the guilty verdict actually

-13-

rendered in *this* trial was surely unattributable to the error.'") (quoting <u>Sullivan v. Louisiana</u>, 508 U.S. 275, 279 (1993)).  The only evidence linking Holmes to the gun was his admission to Officer Singh, which Holmes denied at trial, and his possession of a key to the house where the guns were found.  Given this limited evidence, and the contradictory evidence presented by Holmes' witnesses, we cannot say that the improperly admitted statements by the CI that he had twice seen Holmes at the residence in possession of a firearm "merely corroborated the large amount of evidence" that was properly admitted.  <u>Lee</u>, 374 F.3d at 645.  <u>See</u> <u>also</u> <u>Bobadilla v. Carlson</u>, 575 F.3d 785, 793 (8th Cir. 2009) (affirming grant of habeas relief where prosecution's case rested heavily on improperly admitted testimony of social worker, and other evidence of defendant's guilt was "minimal"); <u>United States v. Bordeaux</u>, 400 F.3d 548, 562 (8th Cir. 2005) (Confrontation Clause violation not harmless where only admissible evidence of defendant's guilt "was his statement to the FBI agent that he might have done things that he no longer remembered doing"); <u>Pugh</u>, 405 F.3d at 401 (Confrontation Clause violation not harmless where the only other identifying witness said she thought the robber looked like the defendant and other credibility issues called evidence into doubt).  We conclude that the Confrontation Clause violation was not harmless beyond a reasonable doubt as related to the felon-in-possession charge.[3]

---

[3]During oral argument, we questioned whether the conviction and sentence on the gun count would be harmless if the drug count was affirmed since Holmes received concurrent 120-month sentences on both counts, driven by the mandatory minimum sentence on the drug count.  The $100 special assessment imposed on each conviction, as well as collateral consequences stemming from the additional conviction, answer the question in the negative.  <u>See</u> <u>Ray v. United States</u>, 481 U.S. 736, 737 (1987) (per curiam) (presence of $50 assessment precludes application of "concurrent sentence doctrine").

## III.

We affirm Holmes' conviction on Count 2. We reverse his conviction on Count 1, vacate the judgment and sentence imposed on that count, and remand the case to the district court for further proceedings consistent with this opinion.

_____