# United States Court of Appeals
## For the Eighth Circuit

_____

No. 25-1263
_____

United States of America

*Plaintiff - Appellee*

v.

Terrell Simpson

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City
_____

Submitted: December 16, 2025
Filed: June 2, 2026
_____

Before GRUENDER, KELLY, and ERICKSON, Circuit Judges.
_____

KELLY, Circuit Judge.

Terrell Simpson was convicted after trial on one count of being a felon in possession of a firearm. He appeals, arguing that the district court erred at trial by admitting evidence of an anonymous tip. We agree, and therefore reverse, vacate Simpson's conviction, and remand.

I.

On May 10, 2020, Kansas City police received an anonymous tip that Terrell Simpson, who had been convicted of a felony, was in possession of a gun. Detective Rorabaugh followed up and found that both Simpson and his wife, Kenya Turner, had active arrest warrants. The next day, Rorabaugh and his partner went to Turner's apartment, where they saw Turner's car[1] leaving with Simpson in the passenger seat. After following the car for several blocks, Rorabaugh asked a marked police unit to make a traffic stop. Officers Schoolfield and Votaw then initiated a stop and ordered Turner and Simpson out of the car.[2] As Turner's car stopped, Schoolfield said, "Passenger digging." Because of the tip, the officers considered the stop a "high-alert car check," and thus, they gave loud, specific commands to Turner and Simpson and approached the car with their guns drawn. Turner and Simpson followed the officers' instructions, got out of the car, and were both arrested. The officers searched the car and found a gun inside a purse on the floor of the passenger seat. Simpson was charged with being a felon in possession of a firearm.

Before trial, Simpson filed a motion in limine to exclude any testimony about the tip, asserting it was inadmissible hearsay and violated his Sixth Amendment Confrontation Clause rights. The government opposed the motion, arguing the tip would not be offered for its truth but to provide context for the tone and manner of the traffic stop. Simpson responded that neither the propriety of the stop nor the officers' conduct in carrying it out was at issue. Simpson also proffered alternative ways to provide the jury with any necessary context or to eliminate the need to do so.

The district court denied the motion, finding the tip could be offered as "context and to give the jury a better understanding of why the stop was conducted

---

[1]The person driving the car was later identified as Turner.

[2]The government presented evidence of the traffic stop in the form of dash camera footage from Schoolfield and Votaw's police car.

in the manner in which it was." Accordingly, the government could say that the officers received a tip, believed Simpson might be armed, and knew Simpson had an outstanding warrant for his arrest. Simpson again proposed evidentiary alternatives, which he asserted met the government's need to explain the officers' conduct without having to introduce the tip. The court declined to reconsider its ruling. The next day, Simpson moved for a mistrial, arguing that admission of the tip into evidence was unduly prejudicial. The district court denied the motion.

The jury found Simpson guilty. Simpson appeals, arguing admission of the tip violated his Confrontation Clause rights or, at a minimum, was substantially more prejudicial than probative. He also contends the government made improper arguments in closing, depriving him of a fair trial.

## II.

### A.

We begin with Simpson's Confrontation Clause challenge, which we review de novo. United States v. Taylor, 813 F.3d 1139, 1149 (8th Cir. 2016) (citing United States v. Young, 753 F.3d 757, 772 (8th Cir. 2014)). "The Confrontation Clause bars admission of a witness's testimonial hearsay statements unless the witness is unavailable and the defendant has had a prior opportunity to cross examine him." Id. at 1139 (citing United States v. Wright, 739 F.3d 1160, 1170 (8th Cir. 2014)).

"The Sixth Amendment's Confrontation Clause guarantees a criminal defendant the right to confront the witnesses against him. The Clause bars the admission at trial of 'testimonial statements' of an absent witness unless she is 'unavailable to testify, and the defendant ha[s] had a prior opportunity' to cross-examine her." Smith v. Arizona, 602 U.S. 779, 783 (2024) (alteration in original) (quoting Crawford v. Washington, 541 U.S. 36, 53–54 (2004)). A tip to aid law enforcement in an investigation "clearly fall[s] within the class of statements considered testimonial." United States v. Holmes, 620 F.3d 836, 841 (8th Cir. 2010).

But Confrontation Clause rights apply only to testimonial hearsay, Smith, 602 U.S. at 784, "that is, evidence offered to prove the truth of the matter asserted," Holmes, 620 F.3d at 841.

The government asserts the anonymous tip offered in Simpson's case was not hearsay—and thus not covered by the Confrontation Clause—because it was not offered for its truth. Specifically, the government argues the tip was necessary background information that "explained why officers acted as they did." Otherwise, in the government's view, the officers' conduct would likely "defy jurors' expectations" of a typical traffic stop.

It is true that "out-of-court statements are not hearsay if they are offered 'to explain the reasons for or propriety of a police investigation.'" Id. (quoting United States v. Malik, 345 F.3d 999, 1001 (8th Cir. 2003)). But "[t]his type of evidence will be allowed into evidence to explain a police investigation . . . only when the propriety of the investigation is at issue in the trial." Id. (citing Malik, 345 F.3d at 1001–02). Here, the record does not support a finding that "the propriety of the investigation" was at issue in Simpson's trial. Simpson's defense was that Turner, not he, possessed the gun found in the purse. Simpson did not challenge the propriety of the stop, the reasonableness of the officers' conduct in connection with the stop, or even the fact of his prior conviction. His only challenge to police conduct concerned the risks of contamination in the officers' collection of DNA—conduct that was unrelated to the reason for the stop or how the officers carried it out. On this record, the tip was not relevant to its stated purpose. See Fed. R. Evid. 401.

Even if the propriety of the stop had been at issue, the government's unwillingness to consider evidentiary alternatives suggests that the tip was, at least in part, offered for its truth. When a statement "is both permissible background and highly prejudicial, otherwise inadmissible hearsay, fairness demands that the government find a way to get the background into evidence without the hearsay." United States v. Alonzo, 991 F.2d 1422, 1426–27 (8th Cir. 1993). Here, there were ways to provide the jury with background information—or to avoid the need to

provide background information altogether—without introducing hearsay evidence. Simpson proposed at least two alternatives. One proposal included a shortened version of the dash cam video that showed Simpson's movements when he was still in the car—movements the officer characterized as "digging"— but did not include audio of the officers' commands or video of them approaching with guns drawn. With this version, the jury would see none of the "expectation-defying" evidence, and thus there would be no need to need to "explain why officers acted as they did."

Another proposal was to allow the government to play the entire dash cam video, but to limit the type of testimony allowed to explain the tone and manner of the traffic stop: the officers could testify either that they believed *someone* in the car was armed or that they knew the driver and passenger both had arrest warrants. With this option, the jury would see the entire traffic stop and be provided an explanation for why the officers conducted it as they did. Both of the proposed alternatives provided the background information the government asserted was necessary, and neither required admission of the tip.

The government disagrees, asserting the alternatives were insufficient to meet its evidentiary purpose. On appeal, the government argues:

> Simpson's suggestion . . . that officers could have testified that they "received information that *one of the car's occupants* might be armed" . . . [is] misleading because officers did not "receive information that one of the car's occupants might be armed" but rather received information that *Simpson* might be armed.

> Simpson's defense at trial was that the woman possessed the firearm, and . . . bowdlerizing the facts to incriminate her would have made that defense more plausible . . . .

Yet if the tip was offered solely for the non-hearsay purpose of explaining the officers' conduct during the traffic stop, it would make no difference whether the tip specifically identified Simpson or Turner as possibly being armed—the stop would presumably still have been "high risk." In this way, the government's argument on

appeal belies the assertion that the tip was offered merely as background information. See United States v. Blake, 107 F.3d 651, 653 (8th Cir. 1997) ("Where the only possible relevance of the out-of-court statement is to show the defendant committed the act he has been charged with, the statement is not properly admissible for a non-hearsay purpose." (citing United States v. Azure, 845 F.2d 1503, 1507 (8th Cir. 1988))).

We conclude admission of the tip violated Simpson's rights under the Confrontation Clause.

B.

Next, we must determine whether this error was harmless. "A harmless-error analysis in the context of a [C]onfrontation [C]lause violation requires us to 'examine the other evidence adduced at trial and determine whether it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" United States v. Mueller, 661 F.3d 338, 349–50 (8th Cir. 2011) (quoting Barrett v. Acevedo, 169 F.3d 1155, 1164 (8th Cir. 1999)). We consider several factors, including the importance of the disputed testimony, whether the testimony was otherwise cumulative, and the overall strength of the government's case. Id. at 350.

The government argues any error was harmless because its case against Simpson was "overwhelming." It points to evidence that the gun was found in a purse on the floor where Simpson had been sitting and an officer's testimony that Simpson had been "digging" when the car was pulled over, suggesting Simpson was concealing contraband. The government also highlights its evidence that Simpson's DNA was on the trigger and trigger guard of the gun, and when interrogated about the gun, Simpson said it was in the purse before anyone told him where the gun had been found.

-6-

None of this evidence, however, went unchallenged. As to the "digging" testimony, Simpson characterized the government's assertion that he was hiding contraband as nearly physically impossible. He offered the jury multiple alternative interpretations of his movements in the car, pointing out that the dash cam video shows that Simpson never bends forward but rather looks from side to side, and he gets out of the car with a water bottle in his hand. The video does not blatantly contradict either party's characterization, and the jurors had the opportunity to see the video to decide for themselves whose description was more plausible.

Simpson also challenged the reliability of the DNA collection and, more significantly, he challenged how long the DNA had been on the gun. To find Simpson guilty, the jury had to find that he possessed the firearm "on or about May 11, 2020"—the date of the traffic stop. There was no evidence, however, to indicate when the DNA landed on the gun or how long it could have remained there.[3] As for the location of the gun, Simpson pointed out that it was found at the bottom of a "very deep" purse. And while the jury heard that shortly after the stop Simpson acknowledged there was a gun in the purse, they also heard his explanation that he knew where the gun was found because the officers were discussing it in front of him before he was interrogated.

On this record, the "overall strength of the prosecution's case" was not so overwhelming that we can say "beyond a reasonable doubt that [the admission of testimony about the tip] did not contribute to the verdict obtained." Mueller, 661

---

[3]We note that the jury submitted the following question to the court during deliberation:

> In Instruction No. 19, it states that possession must take place at a given time. Is that time considered to be the time of the traffic stop or any given time?

The tip was the only evidence offered at trial that Simpson possessed a firearm at any time other than the traffic stop.

F.3d at 349. Trial in this case lasted only two days, including jury selection, and the jury heard about the tip multiple times. The government mentioned it several times in its opening statement, telling the jury that: law enforcement received a tip "indicating that the defendant was armed"; an officer followed up on the tip "because of the specific nature of it naming the defendant, saying he's possibly armed"; additional officers were "recruited"; and officers were told "to be very wary because they believed this defendant may be armed." Rorabaugh testified about the tip, explaining why he "followed up" and tried to locate Simpson. And so did Schoolfield, who assisted in the traffic stop.[4] The government again reminded the jury about the tip "that the defendant was armed" in its closing argument.

As the government points out, the district court gave two instructions on the tip—one during Rorabaugh's testimony and one in final jury instructions—both of which told the jury that the tip could only be considered "for the limited purpose of understanding why law enforcement officers acted the way they did," and could not be used as evidence that Simpson possessed a gun. But Simpson was on trial for being a felon in possession of a firearm, and the only disputed issue was possession: whether Simpson knowingly possessed a firearm on May 11, 2020. See United States v. Nelson, 725 F.3d 615, 622 (6th Cir. 2013) ("[T]he prejudicial nature of the evidence and the fact that it went to the key issue for the jury's resolution made it unlikely that the limiting instruction adequately protected [defendant] from prejudice."). The erroneously admitted evidence went directly to the one disputed element of the offense, and it was the only testimony the jury heard that Simpson was in actual possession of a firearm. Moreover, Simpson had not challenged the propriety of the officers' conduct, which was the only proffered reason for the tip's admission. Under these circumstances, the resulting risk of prejudice was simply too great to be overcome by an instruction. See Bruton v. United States, 391 U.S. 123, 135 (1968) ("[T]here are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the

---

[4]For example, the government asked Schoolfield: "Did Detective Rorabaugh specifically tell you that there was an individual named Terrell Simpson who was potentially armed?"

defendant, that the practical and human limitations of the jury system cannot be ignored.").

Because the error here was not harmless beyond a reasonable doubt, we vacate Simpson's conviction.

## III.

Simpson also argues that the government made improper comments in closing argument, including its reference to Simpson's theory of defense as "cockamamie" and "ridiculous." The government concluded its rebuttal argument by telling the jury, "I assure you, based on the evidence that has been presented in this case, when you find him guilty, you won't be telling him anything[] that he doesn't already know." As a result, Simpson asserts, he was deprived of a fair trial. Without countenancing the comments, we decline to address Simpson's argument because we otherwise vacate his conviction and remand to the district court.

## IV.

We vacate Simpson's conviction and remand to the district court for further proceedings.

_____